IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GULFMARK OFFSHORE, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0249-WS-N |
| ) | |
| **BENDER SHIPBUILDING & REPAIR** ) | |
| **CO., INC.,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This stayed matter comes before the Court on Plaintiff's Motion to Refer this Action to Bankruptcy Court (doc. 47).  The Motion has been briefed and is ripe for disposition.

**I.     Background.**

On May 6, 2009, plaintiff, GulfMark Offshore, Inc. ("GulfMark"), filed a Complaint (doc. 1) against Bender Shipbuilding & Repair Co., Inc. ("Bender") and five individual officers and/or directors of Bender (collectively, the "Individual Defendants").  The ten-count Amended Complaint alleges, *inter alia*, that Bender breached a contract to build three 245-foot vessels for GulfMark.  Relief sought by GulfMark includes compensatory damages in excess of $44 million, representing sums that it advanced to Bender as milestone payments under the contract. GulfMark also pursues claims against Bender on theories such as accounting (to determine how Bender spent the contract proceeds), declaratory judgment (to obtain a declaration that certain ship hulls, engines and other equipment and materials in Bender's possession belong to GulfMark), detinue and constructive trust (again, for the purpose of obtaining assets presently in Bender's possession), as well as unjust enrichment and anticipatory breach (to recover the unrequited contract payments).

In addition to these claims against Bender, GulfMark interposes various claims against the Individual Defendants, on theories of breach of fiduciary duty (as to all Individual Defendants) and suppression and negligent misrepresentation (as to defendant Thomas Bender). GulfMark seeks the same $44 million in compensatory damages from the Individual Defendants

that it does from Bender.

On June 16, 2009, Bender notified the Court that an involuntary bankruptcy petition had been initiated against it by GulfMark and other creditors in the U.S. Bankruptcy Court for the Southern District of Alabama. That proceeding soon evolved into voluntary bankruptcy case under Chapter 11. On July 8, 2009, the undersigned stayed GulfMark's claims against Bender in this action pursuant to the automatic stay provisions of 11 U.S.C. § 362. (Doc. 28.) On August 3, 2009, the Court broadened the stay to encompass GulfMark's claims against the Individual Defendants based on findings that (1) "[t]o the extent that GulfMark succeeds in obtaining a judgment against the Individual Defendants, that judgment will be, in effect, a judgment against [Bender]" because of operative indemnification provisions; and (2) stay is proper under the inherent powers of the Court to avoid inefficiencies, unnecessary duplication, and risk of inconsistent judgments caused by decoupling GulfMark's claims against Bender from those against the Individual Defendants. (Doc. 33, at 4-6.)

Now GulfMark asks the Court to refer this entire action to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and this District Court's general Order of Reference. Defendants have opposed this request and apparently desire that this action remain stayed in this forum unless and until such time as the Bankruptcy Court may lift the automatic stay.

**II.    Analysis.**

By statute, "[e]ach district court may provide that ... any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a); *see generally In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1039 (11th Cir. 2008) (recognizing that "bankruptcy court jurisdiction exists, by reference from the district courts, in three categories of proceedings: those that arise under title 11, those that arise in cases under title 11, and those related to cases under title 11") (citations and internal quotation marks omitted); *In re Toledo*, 170 F.3d 1340, 1344 (11th Cir. 1999) ("The bankruptcy court's jurisdiction is derivative of and dependent upon these three bases."). This District Court has long utilized the § 157(a) referral mechanism as a matter of course. A general Order of Reference in this District Court that went into effect on July 10, 1984 provides that, pursuant to § 157(a), "all cases under Title 11, and all proceedings arising under Title 11 or arising in or related to cases under Title 11, are referred to the Bankruptcy Judges of this District

...." *Id.*

The parties spar about whether this action qualifies as a core proceeding for purposes of bankruptcy court jurisdiction under § 157. Core proceedings are "those arising under title 11, or arising in a case under title 11." *Toledo*, 170 F.3d at 1349; *see also* 28 U.S.C. § 157(b)(1). For purposes of assessing the jurisdictional implications of the Motion to Refer, however, the disagreement on this point is inconsequential because the alternative "related to" basis for bankruptcy jurisdiction is plainly satisfied.[1] As the Eleventh Circuit recently reiterated, the "test

---

[1] That said, the classification of GulfMark's claims as core or non-core has a profound impact on the scope of the Bankruptcy Court's authority and the standard of review applicable to its determinations. In a core proceeding, district courts apply "normal, deferential standards of appellate review to the bankruptcy court's disposition." *Toledo*, 170 F.3d at 1347. By contrast, in a non-core proceeding, "the bankruptcy court could only submit proposed findings of fact and conclusions of law, not a final order or judgment, and the district court [is] obligated to conduct a *de novo* review of those matters to which" objection is made. *Id.* But the question of whether the Bankruptcy Court should enter a final order and judgment, or merely proposed findings of fact and conclusions of law, on GulfMark's claims is not squarely presented by the pending Motion to Refer this Action to Bankruptcy Court. Therefore, the core / non-core characterization of GulfMark's claims is best reserved for the Bankruptcy Court to decide in the first instance.

Nonetheless, on the record and arguments presented thus far, GulfMark has not adequately explained its position that this is a core proceeding. The law of this Circuit is clear that a proceeding is core only if it "involves a right created by the federal bankruptcy law" or "if the proceeding is one that would arise only in bankruptcy." *In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791, 797 (11th Cir. 2007) (citations omitted). By contrast, "[a] proceeding is not core if the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy." *Id.* (citation and internal quotation marks omitted). Stated differently, core proceedings consist solely of "a proceeding [that] invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code" and a proceeding involving "administrative matters unique to the management of a bankruptcy estate" by invoking "the peculiar powers of the bankruptcy court." *Toledo*, 170 F.3d at 1349-50 (citations omitted). In briefing the core/non-core issue, GulfMark eschews discussion of these firmly entrenched Eleventh Circuit tenets (which were properly identified by defendants), but instead argues that the proceeding qualifies as core using a different iteration of the legal standard culled from a law review article. That approach is not helpful. Under Eleventh Circuit jurisprudence, this action is a core proceeding only if the subject claims either (1) invoke a substantive right created by the federal bankruptcy law, or (2) could not exist outside of bankruptcy. This binding test frames the core/non-core analysis, despite GulfMark's attempt to substitute more favorable wording from another source. GulfMark has not explained how either prong of the applicable standard is satisfied here.

for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. ... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Lawrence v. Goldberg*, 573 F.3d 1265, 1270-71 (11th Cir. 2009) (citations omitted).  The "related to" test is both "liberal" and "extremely broad."  *Toledo*, 170 F.3d at 1345.  In this action, GulfMark seeks an award of $44 million from the debtor (as well as other defendants whose obligations would be subject to indemnification by the debtor), and judicial determinations of property rights concerning assets presently in the debtor's possession.  Under no reasonable interpretation of § 157 can GulfMark's claims be viewed as not satisfying the "related to" inquiry.  Defendants reluctantly concede as much by allowing that "this Court has the power to refer this litigation and all parties to the Bankruptcy Court" on a "related to" theory.  (Doc. 51, at 2.)

In addition to satisfying the jurisdictional provisions of 28 U.S.C. § 157, this matter clearly falls within the range of cases embraced by the operative Order of Reference.  That Order states, in part, that "all proceedings arising under Title 11 or arising in or related to cases under Title 11, are referred to the Bankruptcy Judges of this District Court."  Given that GulfMark's claims are "related to cases under Title 11," as set forth above, there can be no doubt that this action lies within the category of cases that this District Court refers to the Bankruptcy Court pursuant to the Order of Reference.

Despite the presence of bankruptcy jurisdiction and the Order of Referral dictating that the case should be referred to Bankruptcy Court, defendants oppose such a referral on two grounds.  First, they balk that referral "will not accomplish anything of substance, because the Bankruptcy Court will eventually have to send at least a part of this case back to this Court." (Doc. 51, at 3.)  Defendants' argument flows from the statutory limitation on bankruptcy judges' ability to conduct jury trials in cases referred to them; indeed, bankruptcy judges may conduct jury trials only "if specially designated to exercise such jurisdiction by the district court and ***with the express consent of all the parties***."  28 U.S.C. § 157(e) (emphasis added).  Curiously, not a single defendant represents that he or it will withhold such consent; rather, they simply raise the theoretical possibility that "it is unlikely that all parties will give such consent."  (Doc. 51, at 3.)

Given defendants' election to tiptoe around the consent issue, rather than making affirmative statements, there is reason to doubt whether any of them will, in fact, withhold consent to a jury trial in the Bankruptcy Court. The Court will not forego referral of this matter to a bankruptcy judge based on mere speculation that one or more parties may not consent to jury trial in that forum.[2]

More importantly, the Court cannot accept defendants' premise that the mere potential of a jury trial in this District Court implies that referral to the Bankruptcy Court in the interim "will not accomplish anything." Federal courts have universally held that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court." *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007) (collecting cases).[3] Retention of jurisdiction by the Bankruptcy Court for pretrial matters does not curtail any party's Seventh Amendment right, but it does "promote[] judicial

---

[2] Although the parties do not address it, the Court is aware of the strand of authority holding that, notwithstanding § 157(e), bankruptcy judges are not authorized to conduct jury trials in non-core proceedings because of the *de novo* review provisions of § 157(c)(1). *See, e.g., In re National Eastern Corp.*, 391 B.R. 663, 670 (Bankr. D. Conn. 2008) ("The bankruptcy court is constitutionally prohibited from holding a jury trial in noncore matters."); *McCord v. Papantoniou*, 316 B.R. 113, 124 (E.D.N.Y. 2004) ("bankruptcy courts cannot hold jury trials with regard to non-core claims"); *In re Daewoo Motor America, Inc.*, 302 B.R. 308, 314 (C.D. Cal. 2003) ("there may be no jury trial in bankruptcy court for non-core proceedings because such jury trials would violate the Seventh Amendment"); *In re Envisionet Computer Services, Inc.*, 276 B.R. 7, 10 (D. Me. 2002) (similar). The rationale is apparently that *de novo* review of a jury's findings is impossible, yet § 157(c) and the Constitution demand such review by district judges of bankruptcy court rulings in non-core proceedings. This Court need not delve into this issue at present because it involves contingencies that may never come to pass (*i.e.*, the need for a jury trial to resolve the dispute, the consent of all parties to a jury trial before the Bankruptcy Court, and the determination that the matters set for jury trial are non-core).

[3] *See also In re Centrix Financial, LLC*, 2009 WL 1605826, *4 (D. Colo. June 8, 2009) ("allowing the bankruptcy court to supervise discovery, conduct pretrial conferences, and rule on pretrial motions -- including dispositive motions -- does not infringe on the right to trial by jury"); *Stein v. Miller*, 158 B.R. 876, 880 (S.D. Fla. 1993) (bankruptcy court's ruling on dispositive motions does not trammel right to a jury trial); *City Fire Equipment Co. v. Ansul Fire Protection Wormald U.S., Inc.*, 125 B.R. 645, 649 (N.D. Ala. 1989) (*en banc*) ("This court concludes that the mere filing of a jury demand does not cause the Bankruptcy Court to lose 'jurisdiction' of the action(s) or mandate that the reference be withdrawn.").

economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them." *Id.* at 787-88.[4]  Interestingly, defendants rely on *In re Trinsic, Inc.*, 2008 WL 748394 (S.D. Ala. Mar. 18, 2008), for the proposition that referring GulfMark's claims to the Bankruptcy Court would be futile because they would eventually be returned here for trial.  But closer reading of *Trinsic* reflects that Chief Judge Granade, while granting a motion to withdraw the reference because of a jury demand, specifically "delay[ed] the withdrawal until the bankruptcy court certifies that the case is ready for trial." *Id.* at *2.  And the *Trinsic* plaintiffs' equitable claims were specifically excluded from the withdrawal of the reference, such that the bankruptcy court retained them through final disposition.  Clearly, the *Trinsic* referral accomplished something, in terms of preparing the legal claims for trial and adjudicating the equitable claims.  Thus, far from bolstering defendants' contention that referral is pointless, *Trinsic* actually supports GulfMark's position that referral of all legal claims is appropriate until such time as they are ready for trial, and that referral of all equitable claims is appropriate until final disposition.[5]

Defendants' second line of argument is that referral would actually undermine interests

---

[4]   *See also City Fire*, 125 B.R. at 649 (noting that "the Bankruptcy Court is uniquely qualified and has authority, even in actions such as this in which a jury trial has been demanded, to supervise discovery and conduct pre-trial conferences and rule on motions"); *Centrix*, 2009 WL 1605826, at *4 (because bankruptcy system promotes judicial economy and efficiency by harnessing bankruptcy court's unique knowledge of Title 11 and familiarity with actions before it, "district courts would undermine the statutory scheme by immediately withdrawing the bankruptcy court reference in every case merely because there is a right to jury trial on some claims"); *In re Price*, 2007 WL 1125639, *9 (Bankr. N.D. Ala. Apr. 16, 2007) (opining that where adversary proceeding raises purely bankruptcy issues that are routinely handled by bankruptcy judges, bankruptcy court should adjudicate such matters even if district court is proper place for trial).

[5]   A number of GulfMark's claims against Bender (including specifically those for accounting, declaratory judgment, constructive trust and possibly detinue) are equitable in nature, such that no right to jury trial attaches.  *See, e.g., Grancinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (in analyzing whether Seventh Amendment right to jury trial attaches, courts "examine the remedy sought and determine whether it is legal or equitable in nature"); *Trinsic*, 2008 WL 748394, at *1 (plaintiff's accounting claims that had been previously referred to bankruptcy court "are strictly equitable claims to which no right to trial by jury attaches").

of efficiency and judicial economy by causing duplicative trials and "hinder[ing] the orderly progress of the bankruptcy" by consuming vast resources in the litigation of GulfMark's presently stayed claims. (Doc. 51, at 4.) These concerns are unfounded. Of course, this action has been stayed in its entirety pursuant to 11 U.S.C. § 362. But Bender and various creditors (including GulfMark) have been actively litigating matters in Bankruptcy Court that overlap GulfMark's claims in this action.[6] The Bankruptcy Court is well suited to evaluate the extent to which this Court's stay order should remain in place after referral, as well as the extent to which it should be modified to promote economical, expeditious and efficient resolution of the issues joined between the parties. Therefore, the Court cannot endorse defendants' speculative concern that referral may divert resources from the bankruptcy case, multiply the burdens on the parties and the Bankruptcy Court, and disrupt the reorganization process. The Bankruptcy Court can weigh all of these considerations and calibrate any lifting of the stay in a manner to maximize efficiency and minimize the deleterious effects whose specter has been raised by defendants.[7] Finally, to the extent that defendants express concern about the risk of duplicative trials and inconsistent judgments if GulfMark's claims are ultimately fractured for trial across two different fora, the undersigned is of the opinion that referring this action to the Bankruptcy Court in its entirety will actually minimize (not exacerbate) any such redundancies.[8]

---

[6]  Indeed, the Bankruptcy Court is already addressing GulfMark's claims of ownership to certain assets in Bender's possession (namely, multiple ship hulls) in the context of the debtor's request to use those assets for cash collateral purposes. (Doc. 47, ¶ 12.) Referring GulfMark's parallel claims in this action concerning those same assets to the Bankruptcy Court at this time would promote interests of efficiency and judicial economy.

[7]  On this point, defendants' concerns appear overblown. If, for example, the Bankruptcy Court were to lift the stay as to GulfMark's equitable claims for ownership of the ship hulls, such action appears unlikely either to hinder the bankruptcy proceedings or to impose substantial incremental burden on the parties, given that the issue of GulfMark's interest (if any) in the hulls has already been joined and is presently being actively litigated in that forum. Again, however, the Bankruptcy Court is in the best position to evaluate defendants' stated concerns and to manage the forward progress of GulfMark's claims in such a manner as not to detract unduly from the bankruptcy proceedings, but rather to minimize redundancy and encourage timely and orderly disposition of the claims.

[8]  To be sure, some duplication may be inevitable given the overlapping claims and issues presently pending in both venues, and the possibility that the referral may need to be

In short, then, referring this matter to the Bankruptcy Court until such time as GulfMark's legal claims are ready for trial will adequately protect all parties' Seventh Amendment rights while simultaneously promoting the considerations of judicial economy that underlie Title 11.

### III.   Conclusion.

For all of the foregoing reasons, Plaintiff's Motion to Refer this Action to Bankruptcy Court (doc. 47) is **granted**.[9]  This action is hereby **referred** to the United States Bankruptcy Court for the Southern District of Alabama pursuant to 28 U.S.C. § 157 and this District Court's general Order of Reference.  The Clerk's Office is **directed** to transfer the entire case file to the Bankruptcy Court.  The Clerk of Court is further **directed** to close this file for administrative and statistical purposes; provided, however, that nothing herein is intended to preclude reopener upon certification by the Bankruptcy Court that any jury-eligible claims as to which consent

---

withdrawn as to certain causes of action because of the consent issue discussed *supra*.  But there is no certainty that either (a) a jury trial will be needed, or (b) any party will not consent to a jury trial before the Bankruptcy Court.  Unless these circumstances come to pass, the risk of redundancy is merely hypothetical.  What is certain is that referring this action to the Bankruptcy Court obviates a scenario in which both this Court and the Bankruptcy Court work at cross-purposes to each other by entering rulings in parallel proceedings on the same issues involving the same parties on matters that the Bankruptcy Court is empowered to decide.  Consolidating all of the claims, issues and parties in one place before one jurist to the greatest extent possible will advance (not detract from) the objectives of efficiency and judicial economy.  That is precisely what this referral order will accomplish.  By contrast, if this Court were to deny referral, such a ruling would virtually guarantee duplication of effort at some future time as to matters within the Bankruptcy Court's purview by holding back legal and equitable claims for resolution by this Court even though related or even identical claims and issues are presently being litigated before the Bankruptcy Court in ongoing Chapter 11 proceedings.

[9]   Of course, this referral is not irrevocable.  Should any of the claims joined herein reach readiness for jury trial, and should there not be unanimous consent to conducting the jury trial before the Bankruptcy Judge pursuant to § 157(e), then withdrawal of the referral will be appropriate.  As the Northern District of Alabama explained, "Because of the special knowledge of these matters which the Bankruptcy Judges have, the court concludes that the references should not be generally withdrawn until the cases are ready for jury trial.  After discovery is complete, all motions have been ruled upon and pretrial orders filed, the Bankruptcy Court should recommend withdrawal of the references and this court will schedule the cases for jury trial." *City Fire*, 125 B.R. at 650.  This Court will hew to the same procedure.

under § 157(e) has not been provided are ready for trial.

    DONE and ORDERED this 6th day of November, 2009.

                                                      s/ WILLIAM H. STEELE  
                                                      UNITED STATES DISTRICT JUDGE